UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>ALEX IGNACIO RUIZ,<br><br>　　　　　　　　　　　Defendant. | Case No.: **19-cr-1285-GPC**<br><br>**ORDER DENYING MOTION FOR INDICATIVE RULING GRANTING COMPASSIONATE RELEASE**<br><br>**[ECF No. 73]** |

Defendant Alex Ignacio Ruiz has filed a motion seeking an indicative ruling that this Court would reduce his sentence to time served with Probation-monitored home confinement under 18 U.S.C. § 3582(c). ECF No. 73. The Government opposes. ECF No. 77 ("Opp."). For the reasons that follow, Ruiz's motion is DENIED.

## I.  BACKGROUND

Ruiz was convicted by guilty plea of one count of Importation of a Controlled Substance (Methamphetamine) in violation of 21 U.S.C. §§ 952 and 960(a)(1). ECF No. 57. Ruiz was sentenced to a term of imprisonment of 60 months, followed by 4 years of supervised release. *Id.*; ECF No. 63. Ruiz is currently serving his sentence at the Federal Correctional Institution, Mendota ("FCI Mendota"). Ruiz has served about 23 months of his sentence, and has slightly over two years remaining before his projected release date. ECF No. 73 at 2; Opp. at 1.

On February 14, 2020, Ruiz filed a notice of appeal from his final judgment to the Ninth Circuit Court of Appeals. ECF No. 64. On August 18, 2020, the Ninth Circuit issued an order to stay Ruiz's appellate proceedings pending the resolution of other cases involving Ruiz's codefendants. ECF No. 68. In January 2021, Ruiz moved for an indicative ruling that the Court would reduce his sentence to term served with probation-monitored home confinement under the First Step Act. ECF No. 73 at 1. The Government opposed. ECF No. 77. In response, Ruiz submitted a Reply and Supplemental Briefing on the matter. ECF Nos. 79, 80.

Ruiz is 34-years-old and is obese. Opp. at 18; *see also* ECF No. 33 ("Presentence Investigation Report" or "PSR") at 2. His body mass index ("BMI") is 31.3. ECF No. 73 at 1, 34; Opp. at 15. He has no other documented health issues. *See generally* PSR; ECF No. 73; Opp. Ruiz is Hispanic, which he asserts places him at increased risk for severe illness should he contract COVID-19. ECF No. 73 at 2.

## II. STANDARD OF REVIEW

"As a general rule, the filing of a notice of appeal divests a district court of jurisdiction over those aspects of the case involved in the appeal." *Stein v. Wood*, 127 F.3d 1187, 1189 (9th Cir. 1997). "This rule is 'designed to avoid the confusion and waste of time that might flow from putting the same issues before two courts at the same time.'" *United States v. Stokes*, No. 14-cr-3537-BAS, 2019 WL 259139, at *2 (S.D. Cal. Jan. 18, 2019) (quoting *Kern Oil & Ref. Co. v. Tenneco Oil Co.*, 840 F.2d 730, 734 (9th Cir. 1988)). However, a district court may make an "indicative ruling" while an appeal is pending pursuant to Federal Rule of Criminal Procedure ("Rule") 37. *See* Fed. R. Crim. Pr. 37. Rule 37 provides:

> (a) Relief Pending Appeal. If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may:
>   (1) defer considering the motion;
>   (2) deny the motion; or

> (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.

Fed. R. Crim. P. 37. "If the district court states that it would grant the motion or that the motion raises a substantial issue, the court of appeals may remand for further proceedings but retains jurisdiction unless it expressly dismisses the appeal." Fed. R. App. P. 12.1(b). "If the district court issues an indicative ruling, either that it would grant the motion or that there is a substantial issue, the court of appeals then decides whether to remand the case for a ruling by the district court." *Olivas v. Whitford*, No. 3:14-cv-01434-WQH-BLM, 2020 WL 2991509, at *5 (S.D. Cal. Jun. 4, 2020). A finding that the "motion raises a substantial issue does not bind the district court to a particular ruling on the motion after remand." *Id.*

For the reasons below, the Court would **DENY** Ruiz's request for compassionate release "if the court of appeals remands for that purpose," and finds that the motion does not present a substantial issue meriting remand for further proceedings. Fed. R. Crim. P. 37.

### III. DISCUSSION

Ruiz now moves for an indicative ruling that the Court would grant release under 18 U.S.C. § 3582(c)(1)(A), which provides, in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

3

>(i) extraordinary and compelling reasons warrant such a reduction; or
>
>(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
>. . .
>
>and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, there are two questions before the Court: first, whether Ruiz has satisfied the administrative exhaustion requirement, and second, whether Ruiz has demonstrated extraordinary and compelling reasons for a sentence reduction.

The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, "amends numerous portions of the U.S. Code to promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019) (citing Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019)). One of the changes resulting from the Act is that it "allows defendants, for the first time, to petition district courts directly for compassionate release." *Id*. As one district court recently explained:

>The effect of the amendments is that a district judge has the ability to grant a prisoner's motion for compassionate release even in the face of BOP opposition or its failure to respond to a prisoner's request for compassionate release in a timely manner. . . . Congress's express purpose in implementing these changes was to expand the use of compassionate release sentence reductions under § 3582(c)(1)(A). *See, e.g.,* First Step Act, PL 115-391, 132 Stat 5194, 5239 (titling the subsection amending § 3582, "Increasing the Transparency and Use of Compassionate Release"); 164 Cong. Rec. S7314- 02, 2018 WL 6350790 (Dec. 5, 2018) (statement by Senator Cardin, cosponsor of the First Step Act, noting that its purpose was to "expand[s] compassionate release" and "expedite[] compassionate release applications").

*United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *5 (M.D. Tenn. Mar. 4, 2020); *see also United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020) ("[O]ne of the express purposes of the First Step Act was to increase the use and transparency of compassionate release.").

### A. Exhaustion Requirement

Section 3582(c)(1)(A) imposes an exhaustion requirement requiring a defendant to fully exhaust all administrative rights to appeal before a defendant may move the court for release. On August 10, 2020, Ruiz submitted a request for compassionate release to the Warden of FCI Mendota, which was denied on August 21, 2020. ECF No. 73 at 4; Opp. at 8 n.7. The Government does not dispute that Ruiz has met the exhaustion requirement. Opp. at 8 n.7. Accordingly, the Court finds that it can consider the merits of Ruiz's motion.

### B. Extraordinary and Compelling Reasons

Section 3582(c)(1)(A) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons," and only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Section 1B1.13 of the Sentencing Guidelines further explains that a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that:

> (1) (A) Extraordinary and compelling reasons warrant the reduction; or
>
> . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

Application Note 1 to this Guidelines provision enumerates certain circumstances constituting "extraordinary and compelling reasons" that justify a sentence reduction, including certain serious medical conditions, advanced age, certain family circumstances,

or some "other" reason "[a]s determined by the Director of the Bureau of Prisons."  The Note specifies that "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" constitutes "extraordinary and compelling reasons" which justify compassionate release.  While the Court's decision is guided by this policy statement, a number of district courts have found that the amended Section 3582(c)(1)(A)(i) grants courts independent discretion to determine whether a defendant has provided extraordinary and compelling reasons for a reduction of their sentence.  *United States v. Decator*, 452 F. Supp. 3d 320, 324 (D. Md.), *aff'd sub nom. United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020); *see also United States v. Redd*, 444 F. Supp. 3d 717, 724–25 (E.D. Va. 2020).

      1.  *Ruiz's obesity does not present an extraordinary and compelling reason justifying his release.*

Ruiz argues that his obesity places him at an increased risk of suffering severe side-effects from COVID-19.  ECF No. 73 at 1–2; ECF No. 80 at 1–2.  The Government contends that Ruiz has not identified extraordinary and compelling reasons justifying his release because his BMI of 31.3 is "mild," and he therefore does not meet the "serious physical or medication condition" category under the Sentencing Commission's policy statement. Opp. at 8.  The Government further argues that Ruiz's obesity does not diminish his "ability to 'provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover,'" Opp. at 14 (quoting U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)),  and that "[o]ther courts across the nation consistently share in this assessment." Opp. at 17.

    Although the Court acknowledges that Ruiz's obesity places him at some increased risk of suffering from serious illness as a result of contracting COVID-19, the Court agrees with the Government that Ruiz's BMI alone does not present an extraordinary and compelling circumstance justifying his release.  Obesity is a factor identified by the

6

Centers for Disease Control and Prevention ("CDC") to heighten the risk of severe injury for those who contract COVID-19. *People Who Are at Higher Risk for Severe Illness*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html ("CDC, *People at Higher Risk*"). Since the early days of the pandemic, the evidence linking obesity to poor outcomes and increased mortality due to COVID-19 has grown stronger. The CDC now lists obesity—or having a BMI of 30 or above—as one of the conditions with the "strongest and most consistent evidence" of association with severe illness from COVID-19. *Evidence Used to Update the List of Underlying Medical Conditions that Increase a Person's Risk of Severe Illness from COVID-19*, Ctrs. For Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-table.html. The Mayo Clinic has concluded that "any degree of obesity (BMI $\geq$ 30 kg/m$^2$) has been associated with poor prognosis in patients with COVID-19." Fabian Sanchis-Gomar et. al, *Obesity and Outcomes in COVID19: When an Epidemic and Pandemic Collide*, MAYO CLINIC PROCEEDINGS (May 19, 2020), https://www.mayoclinicproceedings.org/article/S0025-6196(20)30477-8/fulltext.

District courts have come to different conclusions as to whether obesity, without additional risk factors, constitutes an extraordinary and compelling reasons to justify release in light of the COVID-19 pandemic. *See, e.g.*, *United States v. Richardson*, No. 2:17-CR-00048-JAM, 2020 WL 3402410, at *3 (E.D. Cal. June 19, 2020) ("[T]his Court finds that hypertension or obesity alone—regardless of age—place a defendant at higher risk of COVID-19 complications."); *United States v. Kapeli*, No. CR 16-00172 JMS (01), 2020 WL 5665057, at *4 (D. Haw. Sept. 23, 2020) ("Several courts have determined that obesity—alone or paired with hypertension—does not by itself provide adequate grounds for compassionate release."); *United States v. Jimenez et al.*, No. CR 15-87 (SDW), 2020 WL 5887578, at *2 (D.N.J. Oct. 5, 2020) ("Multiple courts in this District have denied compassionate release to inmates suffering from obesity and/or hypertension, despite the

risk of COVID-19."). Other courts have found that obesity combined with other medical conditions—especially hypertension—may constitute "extraordinary and compelling" reasons justifying release. *See, e.g., United States v. Sarkisyan*, No. 3:15-cr-00234-CRB 15, 2020 WL 2542032, at *2 (N.D. Cal. May 19, 2020) ("Sarkisyan suffers from a number of 'serious physical or medical condition[s],' including hypertensive heart disease, chronic kidney disease obesity, from which he is 'not expected to recover.'"); *United States v. Anderson*, 460 F. Supp. 3d 711, 718 (C.D. Ill. 2020) (granting compassionate release to a defendant with obesity, high cholesterol, and hypertension due to the COVID-19 pandemic); *United States v. Burrell*, 2020 WL 5544154, at *2 (N.D. Tex. Sept. 19, 2020) (granting compassionate release to an inmate with morbid obesity, lymphedema, hypertension, gastritis, and an enlarged heart.). Recently, this Court granted compassionate release to an inmate with a BMI between 35.2 and 36.2[1] who had several other health issues, including latent tuberculosis, a history of elevated blood pressure, a tooth infection, blood in his urine, and esophageal reflux disease ("GERD"). *United States v. Gonzalez*, No. 17-cr-2054-GPC, 2021 WL 37728 (S.D. Cal. Jan. 5, 2021).

Grants of compassionate release based on obesity alone appear to be exceedingly rare. In one such case, the district court granted compassionate release to a defendant due to his "morbid" obesity. *See United States v. Campanella*, No. 18-cr-00328-PAB-12, 2020 WL 4754041, at *1 (D. Colo. Aug. 17, 2020) (granting compassionate release to an inmate with a BMI of 45.52, which qualifies as "severe obesity" according to the CDC). Recently, the Southern District has strongly suggested that obesity alone is insufficient to warrant compassionate release. *See United States v. Weller*, No. 12-cr-5154-W, ECF No. 113 at 3 (S.D. Cal. Nov. 20, 2020) ("A BMI of 30.7, with no other serious resulting

---

[1] The parties calculated the defendant's BMI differently, evidently depending on standard or metric measurements from the defendant's health chart were used.

conditions, fails to persuade the Court that it qualifies as 'extraordinary and compelling.'"); *United States v. Santillan-Lares*, No. 3:18-cr-4935-BTM, ECF No. 57 (S.D. Cal. Sept. 23, 3030) (denying compassionate release to an inmate whose medical records confirmed that her only underlying health condition was obesity).

Ultimately, this Court does not find that Ruiz's slightly elevated BMI of 31.3 qualifies as an extraordinary and compelling reason justifying his release.  While obesity of any nature increases the risk of suffering from severe illness as a result of contracting COVID-19, the medical literature suggests that risk is far greater as one's BMI approaches 40.  *See, e.g.* Jennifer Lighter et. al, *Letter to the Editor: Obesity in Patients Younger Than 60 Years Is a Risk Factor for COVID-19 Hospital Admission*, CLINICAL INFECTIOUS DISEASES (Apr. 9, 2020), https://academic.oup.com/cid/article/71/15/896/5818333?login=true (reporting that COVID patients with a BMI over 35 were even more likely to be admitted to the Intensive Care Unit than patients with a BMI between 30 and 35).  Further, BMI is an inherently imprecise and inaccurate measurement: it cannot substitute for a clinical diagnosis of obesity and it does not "give a full picture of a person's health."  Sarah Sauchelli Toran & Karen Coulman, *Why BMI May Not Be the Best Way to Measure Health and How We Can Improve It*, THE INDEPENDENT (Aug. 3, 2020), https://www.independent.co.uk/health_and_wellbeing/weight-loss-obesity-bmi-unhealthy-measure-a9647761.html.  Finally, "the sad reality is that about half the U.S. population is obese." *United States v. Ornelas*, No. 19CR3295-BAS, ECF No. 63 at 4 (S.D. Cal. Nov. 20, 2020).  Were being marginally obese on its own sufficient to constitute an extraordinary and compelling reason justifying release, "the logical consequence" would be that "the vast majority of prisoners would currently be eligible for release." *Id.*

Thus, Ruiz's case is distinguishable from this Court's decision in *Gonzalez*.  While Ruiz presents with a BMI of 31.3 and no other reported medical conditions, the defendant

9

in *Gonzalez* had several other documented medical conditions, and, significantly, a much higher BMI of between 35 and 37. *See Gonzalez*, 2021 WL 37728, at *1. Moreover, it is telling that this Court could find no more than one case where a request for compassionate release was granted on the basis of obesity alone. Even then, the defendant suffered from "morbid" obesity with a BMI over 40. *See Campanella*, 2020 WL 4754041, at *1. Finally, while not dispositive of the issue, the decisions in *Weller* and *Santillan-Lares* are probative as to whether obesity alone constitutes an extraordinary and compelling reason for release. According to those cases, it does not.

In sum, a BMI of slightly over 30 alone does not constitute an extraordinary and compelling reason justifying release. Aside from demonstrating that he has a BMI of 31.3, Ruiz has not adduced evidence that he suffers from any other health condition. Accordingly, he cannot demonstrate an extraordinary and compelling reason for release on the basis of his obesity.

### 2. *Ruiz's other characteristics and circumstances do not qualify as extraordinary and compelling reasons warranting release*

In addition to arguing that his obesity qualifies him for release, Ruiz argues that, as a Hispanic person, he is at an increased risk of hospitalization and death due to contracting COVID-19. ECF No. 73 at 8. He also contends that FCI Mendota has failed to adequately respond to the COVID-19 emergency, and that conditions at that prison place him at an increased risk of contracting the virus. *Id.* at 9–11; *see also* ECF No. 80 at 2 (noting that correctional workers filed a complaint alleging that FCI Mendota had underreported the number of COVID-19 cases at the facility and that staff "[had] not received adequate protective equipment to maintain a safe environment at the facility.").

Being of Hispanic descent during the COVID-19 pandemic does not constitute an extraordinary and compelling reason justifying Ruiz's release. While courts have recognized that racial disparities in hospitalization and death rates due to COVID-19 are relevant in considering whether to grant motions for compassionate release, these

10

disparities cannot constitute a basis for release on their own.  *See* ECF No. 73, 9; *United States v. Manriquez-Alvarado*, 2020 WL 6709552, at *3–4 (C.D. Ill. Nov. 16, 2020) (denying compassionate release for a "healthy 35-year-old" based only on his Hispanic ethnicity).  More importantly, although the CDC notes that some racial and ethnic minority groups are disproportionately affected by COVID-19, it indicates that inequities in social determinants of health, rather than risk factors specific to COVID-19, are what contribute to the increased risk of infection and complications among these communities.  *See Health Equity Considerations and Racial and Ethnic Minority Groups*, Ctrs. For Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html; see also *United States v. Martin*, No. 2:18-CR-00124-JDL-1, 2020 WL 5752850, at *3 (D. Me. Sept. 25, 2020) ("While the CDC's analysis presents a troubling picture of the impact systemic racism has had on public health in minority communities, it does not suggest that Black individuals are otherwise inherently predisposed to COVID-19 infection and complications.").  Accordingly, the Court does not find that Ruiz's ethnicity provides an independent basis for his release.

Second, while the Court is troubled by the accusations that FCI Mendota has failed to adequately respond to the COVID-19 emergency, the conditions do not rise to the level of endangering his health such that his release would be justified absent other extraordinary and compelling reasons.

In sum, the Court does not find that Ruiz's other circumstances—being Hispanic and the COVID-19 conditions at FCI Mendota—constitute extraordinary and compelling reasons justifying his release.  Because Ruiz has not demonstrated extraordinary and compelling reasons for release, it is unnecessary for the Court to reach the parties' arguments about the sentencing factors or public safety under 18 U.S.C. § 3553.

\ \ \

\ \ \

## IV. CONCLUSION

For the reasons set forth above, the Court **DENIES** Ruiz's motion for an indicative ruling that the Court would grant compassionate release.

**IT IS SO ORDERED.**

Dated: March 22, 2021

Hon. Gonzalo P. Curiel
United States District Judge